MICHAEL JOHNSON, Employee-plaintiff v. HERBIE'S PLACE, Employer, Uninsured, Defendant, NORTH CAROLINA INDUSTRIAL COMMISSION, Agency of the State of North Carolina, Plaintiff v. HERBIE'S PLACE, L.L.C., and BILL KENNEDY, Individually, Defendants

No. COA02-298

(Filed 15 April 2003)

**1. Workers' Compensation— proposed findings—province of Commission—credibility determinations—explanations not required**

The Industrial Commission did not err in a workers' compensation case by not making defendant's proposed findings regarding the integrity of plaintiff's wife and plaintiff's alleged drug abuse. The Commission made specific findings regarding the crucial facts upon which plaintiff's right to compensation depends and does not have to explain its credibility determinations.

JOHNSON v. HERBIE'S PLACE

[157 N.C. App. 168 (2003)]

**2. Workers' Compensation— alleged perjury—no criminal action—credibility of evidence for Commission**

The Industrial Commission correctly refused to deny a workers' compensation award based on plaintiff's alleged perjury where there were no criminal charges. Defendants' allegations of perjury rest upon the credibility of testimony and evidence, of which the Commission is the sole judge.

**3. Workers' Compensation— findings—credibility and weight of evidence**

The Industrial Commission did not err in a workers' compensation action by making a finding which defendants contended conflicted with the evidence. It is the Commission's duty to judge the credibility of the witnesses and to determine the weight to be given testimony.

**4. Workers' Compensation— back injury—cause—findings— conclusive on appeal**

There was sufficient evidence that the back injury suffered by a workers' compensation plaintiff was due to a fall at work rather than the result of a long and gradual deterioration of his back. The Commission's findings of fact are conclusive on appeal, even if there is evidence to support a contrary finding.

**5. Workers' Compensation— failure to obtain insurance— penalty mandatory**

The Industrial Commission did not err by imposing a fine for failure to obtain workers' compensation insurance. Under N.C.G.S. § 97-94(b), the imposition of a penalty is mandatory if the employer refuses or neglects to obtain workers' compensation insurance, and the phrase "failed to" obtain insurance in the Commission's findings carries the same meaning as "neglected to" carry insurance.

Appeal by defendant from opinion and award entered 16 November 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 30 October 2002.

*Hodgman and Oxner, by Todd P. Oxner, for plaintiff-appellee Michael Johnson.*

*Attorney General Roy Cooper, by Assistant Attorney General Tina Lloyd Hlabse and Assistant Attorney General Adrian Phillips, for the State.*

*Smith, James, Rowlett & Cohen, L.L.P., by Norman B. Smith, for defendant-appellant.*

LEVINSON, Judge.

This appeal arises from two consolidated actions: (1) a workers' compensation claim filed by plaintiff Michael Johnson, and (2) a petition for assessment of administrative penalty filed by the Industrial Commission against defendants (Herbie's Place, L.L.C., and Bill Kennedy, individually), plaintiff's employer. Defendants appeal both the award of disability benefits to plaintiff and the assessment of a civil penalty. For the reasons that follow, we affirm.

The procedural history of this case is as follows: On 24 January 2000, plaintiff filed an Industrial Commission Form 18, "Notice of Accident to Employer." Plaintiff alleged that he suffered a back injury as a result of a workplace fall occurring on 1 January 2000. Defendants denied his claim for medical expenses and disability, and plaintiff sought a hearing before the Commission. On 1 March 2000, the Industrial Commission filed a Petition for Assessment of Administrative Penalty for defendants' failure to have Workers' Compensation insurance or self-insurance. The Industrial Commission also moved to consolidate the actions.

Both cases were heard before a deputy commissioner of the Industrial Commission on 9 May 2000. On 23 August 2000, the deputy commissioner awarded plaintiff temporary total disability and medical expenses. The Opinion and Award also assessed a civil penalty against defendant Herbie's Place of $37,200, and against individual defendant Kennedy in "an amount equal to 100% of the medical and disability compensation due to [plaintiff]." The order provided for a reduction in the civil penalties if defendants paid plaintiff "all compensation due under the North Carolina Workers' Compensation Act." Defendants appealed to the Full Commission, which issued its Opinion and Award on 16 November 2001. The Industrial Commission affirmed the deputy commissioner's awards in both cases. The opinion was unanimous as to the administrative penalty. Commissioner Scott dissented from the award of temporary total disability. Defendants appealed to this Court on 11 December 2001.

Standard of Review

"The Workers' Compensation Act should be liberally construed to achieve its purpose of providing compensation to employees injured

by accident arising out of and in the course of their employment[.]" *Lynch v. Construction Co.*, 41 N.C. App. 127, 130, 254 S.E.2d 236, 238, *cert. denied*, 298 N.C. 298, 259 S.E.2d 914 (1979). "The standard of appellate review of an opinion and award of the Industrial Commission in a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law." *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). The Industrial Commission's findings of fact "are conclusive on appeal when supported by competent evidence . . . even [if] there is evidence to support a contrary finding[,]" *Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and "may be set aside on appeal [only] when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000).

"Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission[.]" *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998). Where "defendants' interpretation of the evidence is not the only reasonable interpretation[, it] is for the Commission to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it. As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 472, 570 S.E.2d 121, 124 (2002) (citation omitted). Therefore, "appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams*, 349 N.C. at 681, 509 S.E.2d at 413). However, the Industrial Commission's conclusions of law are reviewable *de novo. Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 468 S.E.2d 269 (1996).

[1] Defendants argue first that the Industrial Commission "committed reversible error by failing to make [certain] specific findings of fact supported by competent and unrebutted evidence[.]" Defendants contend that their proposed findings were "necessary to decide in order for the appellate court to determine whether there was any adequate basis for the Commission's ultimate findings of fact."

Defendants correctly state that the Industrial Commission "must make specific findings of fact as to each material fact upon which the rights of the parties in a case involving a claim for compensation depend." *Hansel v. Sherman Textiles*, 304 N.C. 44, 59, 283 S.E.2d 101, 109 (1981) (citing *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E.2d 692 (1979)). Thus, "the Commission must find those facts which are necessary to support its conclusions of law." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000).

In the instant case, the Industrial Commission awarded plaintiff temporary total disability and medical expenses. Under N.C.G.S. § 97-2(9) (2001), " 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." A compensable injury in the meaning of the workers' compensation statute is an "injury by accident arising out of and in the course of the employment[.]" N.C.G.S. § 97-2(6) (2001). With respect to back injuries, G.S. § 97-2(6) also provides that

> where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, 'injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.

In the factual context of the present case, the Industrial Commission's findings of fact should be sufficient to establish: (1) that plaintiff fell, suffering a "specific traumatic incident," in the course of his employment; (2) that he injured his back as a result of the fall; and (3) that, as a result of the injury to his back, plaintiff was unable "to earn the wages which [he] was receiving at the time of injury in the same or any other employment." Against this backdrop, we evaluate the Order of the Industrial Commission, which included the following pertinent findings of fact:

1. . . . [D]efendant employed plaintiff as a cook. . . .

2. Plaintiff worked . . . for defendant on 31 December 1999 and 1 January 2000. At approximately 5:30 a.m., plaintiff slipped in the kitchen and fell on his back. Two of his co-workers . . . saw him on the floor immediately after he fell. . . .

. . . .

4. A co-employee, Larry Jones, was working at defendant restaurant on the night of 31 December 1999. . . . [He] saw plaintiff slip

on a small amount of butter or margarine and fall, hitting his "tail and right elbow" on the tile floor of the kitchen. Mr. Jones took plaintiff from defendant's business to the emergency room at . . . [the] Hospital[.]"

5. Plaintiff was admitted at 6:05 a.m. on 1 January 2000. Plaintiff reported that he had slipped and fallen while working, injuring his low back. Plaintiff stated that this incident had occurred at work just prior to coming to the hospital. He complained of severe pain. A[n] examination by . . . [a] physician revealed swelling and marks on the skin. The physician excused plaintiff from work pending evaluation at [Moses Cone] Occupational Health.

6. On 6 January 2000, plaintiff was seen at Moses Cone Occupational Health by [Dr.] Ciacchella, M.D., . . . [who] ordered an MRI to be completed the next day[,] . . . [and] excused plaintiff from work for another day.

7. The . . . MRI revealed a broad based left sided disc protrusion at L5-S1 potentially encroaching on the left S1 nerve root. . . . Dr. Ciacchella . . . excused plaintiff from work until . . . 10 January 2000.

8. Plaintiff returned to Dr. Ciacchella on 10 January 2000. Dr. Ciacchella assessed plaintiff as having a herniated nucleus pulposus at L5-S1 with fairly significant symptomotalogy. Dr. Ciacchella referred plaintiff to a neurosurgeon and excused him from work until insurance authorized the referral.

. . . .

14. As a result of the incident on 1 January 2000, plaintiff was rendered incapable of earning wages from defendant or any other employer beginning from 1 January 2000 and continuing through the date of the hearing. . . .

15. The incident on 1 January 2000 was not caused by plaintiff's intoxication.

. . . .

These findings of fact are supported by competent record evidence, and establish in a straightforward manner that plaintiff fell on 1 January 2000 while performing his job; that the fall was witnessed by Larry Jones; and that as a result of his injury, Dr. Ciacchella deter-

mined that he was unable to work until he could obtain neurosurgery. The testimony offered by Jones and Dr. Ciacchella, the two witnesses cited by the Commission in its Opinion, was unimpeached; there is no evidence that Jones was pressured by either side, and no evidence that Dr. Ciacchella was associated with substance abuse or other misbehavior. Further, the authenticity of the Moses Cone Occupational Health records was not challenged. The Commission's findings also support its conclusions of law that (1) "plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant," and (2) "plaintiff is entitled to payment of temporary total disability compensation" and "is entitled to payment of all medical expenses incurred or to be incurred as a result of his low back injury[.]" We conclude, therefore, that the Industrial Commission made "specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Trivette v. Mid-South Mgmt., Inc.*, 154 N.C. App. 140, 144, 571 S.E.2d 692, 695 (2002) (quoting *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977)).

Defendants, however, assert that the Industrial Commission was required to make certain additional findings, which they contend were "material findings of fact" that were "supported by competent and unrebutted evidence." The thrust of defendants' proposed findings is that plaintiff had a history of substance abuse, including abuse of prescribed medications such as OxyContin; and that plaintiff's wife pressured other employees of Herbie's Place to make false statements at the Industrial Commission hearing. Specifically, defendant argues that the Industrial Commission should have found that (1) in order to obtain prescriptions for OxyContin and other controlled substances, plaintiff consulted a Dr. Clark on multiple occasions in 1999 and 2000; (2) that Dr. Clark was subsequently charged with distribution of controlled substances, and was treated for substance abuse; (3) that in order to obtain controlled substances, plaintiff had in 2000, consulted a Dr. Harris, and had gone to Morehead Memorial Hospital; (4) that defendant may have lied to Drs. Clark or Harris, or to physicians at Morehead Memorial, to obtain prescriptions for controlled substances; and (5) that plaintiff's wife had attempted to influence the testimony of certain co-employees, other than Mr. Jones, who might be witnesses before the Industrial Commission.

We conclude that defendants' proposed findings of fact are not necessary to our review of the Commission's determination of plaintiff's entitlement to disability compensation. Defendants' suggested

findings, if true, would generally establish that plaintiff was a drug abuser, and that his wife is not a person of integrity. This evidence may have been pertinent to the Commission's determination of the weight and credibility to assign specific testimony or evidence. However:

> the Commission does not have to explain its findings of fact . . . [or] which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.

*Deese*, 352 N.C. at 116-17, 530 S.E.2d at 553. Moreover, the evidence proffered by defendants in support of their proposed findings was all before the Industrial Commission.

> Defendants merely want this Court to weigh the opinions and testimony of the witnesses in a manner which benefits defendants. On an appeal from the Industrial Commission, this Court is unable to weigh evidence. . . . [T]he Commission may assign more weight and credibility to certain testimony than other. Moreover, if the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal.

*Johnson v. Southern Tire Sales & Serv.*, 152 N.C. App. 323, 327, 567 S.E.2d 773, 776, *disc. review denied*, 356 N.C. 437, 572 S.E.2d 784 (2002). This assignment of error is overruled.

---

[2] Defendants next argue that the Industrial Commission erred by "failing to deny an award of compensation to plaintiff in light of the numerous established instances of perjury, deceit, and subornation of perjury by plaintiff." We disagree.

Intrinsic fraud on the court refers to fraud relating to the "proceeding itself and concerning some matter necessarily under the consideration of the court upon the merits." *Johnson v. Stevenson*, 269 N.C. 200, 152 S.E.2d 214 (1967). Defendants correctly assert that perjury is an intrinsic fraud on the court. *Horne v. Edwards*, 215 N.C. 622, 625, 3 S.E.2d 1, 3 (1939) (discussing "[i]ntrinsic fraud, as for example, perjury, or the use of false or manufactured evidence");

*McCoy v. Justice*, 199 N.C. 602, 605, 155 S.E. 452, 454 (1930) ("perjury and false swearing" considered an "intrinsic fraud"). However:

> In North Carolina perjury is held to be intrinsic fraud and ordinarily is not ground for equitable relief against a judgment resulting from it. . . . [A] party against whom a judgment has been rendered may be granted relief on the grounds of fraud provided the fraud practiced upon him prevented him from presenting all of his case to the court, but . . . *judgment will not be set aside on the grounds of perjured testimony* or for any other matter that was presented and considered in the judgment under attack.

*Thrasher v. Thrasher*, 4 N.C. App. 534, 545, 167 S.E.2d 549, 556-57 (1969) (citing *Cody v. Hovey*, 216 N.C. 391, 5 S.E.2d 165, and *Horne v. Edwards*, 215 N.C. 622, 3 S.E.2d 1) (emphasis added). Thus, the general rule is that "a judgment cannot be vacated because of perjured testimony unless the party charged with perjury has been indicted and convicted or he has passed beyond the jurisdiction of courts and is not amenable to criminal process." *Gillikin v. Springle*, 254 N.C. 240, 244, 118 S.E.2d 611, 614 (1961) (citing *Horne*, 215 N.C. 622, 3 S.E.2d 1, and *McCoy*, 199 N.C. 602, 155 S.E. 452). The rationale is that "[i]f perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly[,] . . . and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony[.]" *Mottu v. Davis*, 153 N.C. 160, 162-63, 69 S.E. 63, 64 (1910).

In the instant case, there have been no criminal charges of perjury arising out of this case. Defendants' allegation of "numerous established instances" of perjury rests, therefore, upon their assessment of the credibility of the evidence and testimony. However, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson v. Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) (citations omitted). We conclude that "[a]lthough the Commission had the discretion to find that [witness's] responses were less than candid, or wholly untruthful, we cannot say, on the record before us, that [the witnesses] committed perjury." *Knight v. Cannon Mills Co.*, 82 N.C. App. 453, 465, 347 S.E.2d 832, 840, *disc. review denied*, 318 N.C. 507, 349 S.E.2d 861 (1986). This assignment of error is overruled.

[3] Defendants argue next that the Industrial Commission erred by making a finding of fact not supported by any competent evidence. We disagree.

Defendants contend that the Industrial Commission's finding regarding "prescriptions being filled other than from Dr. Harris" is unsupported by competent evidence. Their contention is based upon the existence of testimony from Dr. Clark, which defendants argue is in conflict with the Industrial Commission's findings of fact. Defendants have elsewhere argued that Dr. Clark is a substance abuser who has lost all hospital privileges, and who is currently being prosecuted in federal court for distribution of controlled substances. Such evidence was before the Industrial Commission in its determination of whether to make findings of fact based upon the testimony—and thus the credibility—of Dr. Clark. We reiterate that the Commission's findings " 'are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Jones v. Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)), and that "[i]t is the Commission's duty to judge the credibility of the witnesses and to determine the weight given to each testimony." *Gordon v. City of Durham*, 153 N.C. App. 782, 786, 571 S.E.2d 48, 51 (2002) (citing *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 653, 508 S.E.2d 831, 834 (1998)).

Secondly, the challenged findings of fact concern whether or not plaintiff had tried to get controlled substances from Dr. Clark. Evidence of plaintiff's purported substance abuse was also before the Industrial Commission in its determination of plaintiff's credibility. Having resolved issues of credibility to its satisfaction, the Industrial Commission made findings of fact that support its determination regarding plaintiff's legal entitlement to workers' compensation. This assignment of error is overruled.

[4] Defendants argue next that the Industrial Commission's finding "that an injury occurred which disabled plaintiff, must be set aside for lack of competent evidence to support it." We disagree.

Defendants argue that "[t]he unrebutted evidence established that plaintiff's back problems developed over a period of time[,]" and thus that there is no competent evidence that the injury occurring on 1 January 2000 was disabling. This argument is based upon evidence tending to show that plaintiff went to several medical care providers during 1999 and 2000 claiming to suffer from painful conditions, including back pain, that could only be treated with controlled substances. Defendants also direct our attention to evidence tending to show that, on one or more of plaintiff's "drug-seeking"

visits to medical providers, plaintiff listed an employer on the waiting room form.

As defendants argue, one plausible interpretation of the evidence is that plaintiff's condition was due to a long and gradual development of a back condition, rather than from the fall on 1 January 2000, and that the fall did not prevent plaintiff from, *e.g.*, bowling, working, or moving a chair, activities which defendants contend are documented by witness testimony. However, another plausible interpretation, depending on one's determination of the relative strength and credibility of testimony, is that plaintiff suffered a *bona fide* injury to his back on 1 January 2000, which was separate and apart from his alleged substance abuse or his false statements to certain medical providers.

" '[T]he findings of fact made by the Commission are conclusive on appeal, . . . if supported by competent evidence . . . *even though there is evidence which would support a finding to the contrary.*' " *Hunter v. Perquimans County Bd. of Educ.*, 139 N.C. App. 352, 355, 533 S.E.2d 562, 564, (quoting *Hansel*, 304 N.C. at 49, 283 S.E.2d at 104), *cert. denied*, 352 N.C. 674, 545 S.E.2d 424 (2000). *Rivera v. Trapp*, 135 N.C. App. 296, 304, 519 S.E.2d 777, 782 (1999) ("if the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal"). This assignment of error is overruled.

---

[5] Finally, defendants argue that the Industrial Commission erred by imposing a fine for failure to obtain workers' compensation insurance. Defendants contend first that the Industrial Commission "erred as a matter of law when it determined that the civil penalty provisions of N.C.G.S. § 97-94(b) are mandatory[.]" We do not agree.

N.C.G.S. § 97-94(b) (2001), which governs imposition of a civil penalty against an employer such as Herbie's Place, provides in pertinent part:

Any employer required to secure the payment of compensation under this Article who refuses or neglects to secure such compensation *shall be punished* by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. . . . The penalty herein provided may be assessed by the Industrial Commission administratively, with the right to a hearing if requested within 30 days after

notice of the assessment of the penalty and the right of review and appeal as in other cases. . . .

(emphasis added). The language "shall be punished" indicates that the imposition of a penalty against the employer is mandatory if the employer "refuses or neglects" to obtain workers' compensation insurance. *See Pollock v. Waspco Corp.*, 148 N.C. App. 381, 388, 559 S.E.2d 567, 572 (2002) ("G.S. § 97-18(g) [is] mandatory" where statute states penalty "shall be added" in certain situations); *Living Centers-Southeast, Inc. v. N.C. Dep't of Health & Human Servs.*, 138 N.C. App. 572, 580, 532 S.E.2d 192, 197 (2000) ("[o]rdinarily, the word 'must' and the word 'shall,' in a statute, are deemed to indicate a legislative intent to make the provision of the statute mandatory") (quoting *State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978)).

Defendants argue that because the statute also provides that "[t]he penalty herein provided may be assessed by the Industrial Commission administratively," that the imposition of a penalty is optional. However, we agree with the Industrial Commission that this language "does not give the Commission discretion as to whether or not the penalty should be assessed . . . [but] allows the Industrial Commission some discretion in deciding whether or not to assess the penalty administratively without a hearing." Defendants also contend that, were this Court to decide that the Industrial Commission's imposition of a civil penalty is discretionary, the presence of "considerable mitigating evidence" would make it inappropriate to impose a civil penalty upon the present defendant. However, as we conclude that imposition of civil penalties is required under the statute, we necessarily reject defendants' argument that such penalties may only be assessed in the absence of "mitigating evidence."

Defendants also argue that, before a civil penalty could be imposed against either defendant, the Industrial Commission was required to make certain findings establishing the existence of "neglect" which defendants contend requires proof of "something more than mere failure to carry out a duty." We disagree.

Under N.C.G.S. § 97-86 (2001), an appeal from an opinion and award of the Industrial Commission is taken "under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions[, and the] procedure for the appeal shall be as provided by the rules of appellate procedure." Further, compliance with the North Carolina Rules of Appellate Procedure is mandatory. *Marsico v. Adams*, 47 N.C. App. 196, 266

S.E.2d 696 (1980). N.C.R. App. P. 10(a) states that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal." *See Singleton v. Haywood Elec. Membership Corp.*, 151 N.C. App. 197, 204, 565 S.E.2d 234, 239 (2002) (where defendant "failed to set out [relevant] argument as an assignment of error in the record on appeal" this Court holds that "defendant has failed to properly preserve this question for appellate review"). Further, N.C.R. App. P. 10(b) requires that "to preserve a question for appellate review . . . [i]t is . . . necessary for the complaining party to obtain a ruling upon the party's request, objection or motion."

In the instant case, defendants failed to assign error to any of the Commission's findings of fact regarding defendants' failure to secure workers' compensation insurance. Thus, these findings are conclusively established on appeal. *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("each contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding") (citing *Taylor v. N.C. Dept. of Transportation*, 86 N.C. App. 299, 357 S.E.2d 439 (1987). Therefore, our review "is limited to the question of whether the [Industrial Commission's] findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment." *Okwara*, 136 N.C. App. at 591-92, 525 S.E.2d at 484.

In the instant case, the Industrial Commission made the following pertinent findings of fact:

1. . . . Herbie's Place was a limited liability company operating a restaurant business. . . .

2. Defendant Bill Kennedy was a corporate officer with the authority and ability to bring the defendant-employer into compliance with [N.C.G.S. §] 97-93.

3. . . . defendant-employer regularly employed three or more persons.

. . . .

5. . . . defendant-employer failed to maintain a policy of workers' compensation insurance . . . and Bill Kennedy failed to exercise his authority and ability to bring defendant- employer into compliance with [N.C.G.S. §] 97-93.

. . . .

The imposition of a penalty against Herbie's Place is governed by G.S. § 97-94(b), which addresses imposition of a civil penalty against an employer and provides in part that "[a]ny employer required to secure the payment of compensation under this Article who refuses or *neglects to secure such compensation* shall be punished by a penalty[.]" (emphasis added). Assessment of the penalty against individual defendant Kennedy is governed by N.C.G.S. § 97-94(d) (2001), which provides in relevant part as follows:

> . . . *Any person who, with the ability and authority* to bring an employer in compliance with G.S. 97-93, *neglects to bring the employer in compliance,* shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection *may be assessed a civil penalty* by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employer's employees injured during the time the employer failed to comply with G.S. 97-93.

(emphasis added). Thus, a civil penalty *must* be imposed upon an employer who neglects to secure workers' compensation, and *may* be imposed upon an individual who neglects to bring the employer into compliance. As discussed above, the Commission's findings that defendant-employer was subject to the provisions of the workers' compensation statute yet failed to obtain insurance, and that Kennedy was a corporate official who had the ability and authority to enforce compliance yet failed to do so, are conclusively established. However, defendants argue that the Industrial Commission's findings that "defendant-employer failed to maintain a policy of workers' compensation insurance" and that defendant "Kennedy failed to exercise his authority and ability to bring defendant-employer into compliance" do not support the Industrial Commission's conclusion of law that defendants were in violation of N.C.G.S. § 97-93 (2001), because of the Commission's use of the phrase "failed to" rather than "neglected to" comply with the statute. We do not agree.

Defendants propose that in our analysis of G.S. § 97-94(b) and (d), we apply to the word "neglect" the definition given to the word when it is used as a noun, as in "the neglect of a duty," and further assert that "neglect" must mean "something more than mere failure to carry out a duty." However, in G.S. § 97-94(b) and (d), the word "neglect" is found in the phrase "*neglects to secure such compensation,*" and, thus, may properly be defined as follows: "([where] foll[owed] by verbal noun, or *to* + infin[itive]): *Fail, overlook, or for-*

*get the need to.*" Oxford Encyclopedic English Dictionary 970 (Judy Pearsall& Bill Trumble, eds., 2nd ed. 1995) (emphasis added). We conclude that in the context of N.C.G.S. § 97-94, the phrases "neglects to" secure workers' compensation, or "neglects to" bring the employer into compliance, carry essentially the same meaning as "fails to secure" workers' compensation or "fails to bring the employer into compliance." This conclusion is supported by prior appellate opinions addressing G.S. § 97-94, in which the phrase "*neglects to*" obtain workers' compensation coverage is used interchangeably and synonymously with "*fails to*" obtain coverage. *See, e.g., Harrison v. Tobacco Transp., Inc.,* 139 N.C. App. 561, 570, 533 S.E.2d 871, 877, *disc. review denied,* 353 N.C. 263, 546 S.E.2d 96 (2000) (where Industrial Commission finds that "defendant-employer had *failed to secure* workers' compensation insurance" this Court affirms imposition of fine, holding that "the Commission correctly determined that [employer] *had failed to procure necessary insurance* for its North Carolina operations, and thus, that [employer] is in violation of G.S. § 97-94") (emphasis added); *Reece v. Forga,* 138 N.C. App. 703, 705, 531 S.E.2d 881, 883, *disc. review denied,* 352 N.C. 676, 545 S.E.2d 428 (2000) ("where the employer *fails to secure* the payment of compensation . . . such employer shall be liable during continuance of *such refusal or neglect*") (emphasis added). Moreover, regardless of which definition of 'neglect' is applied, the existence of neglect is established in the present case, in which defendants concede that they "[were] very tied up and preoccupied" and simply "forgot about it." We conclude that the Industrial Commission did not err by imposing a penalty on defendants for their failure to obtain workers' compensation insurance as required by G.S. § 97-94. This assignment of error is overruled.

For the reasons discussed above, the opinion and award of the Industrial Commission is

Affirmed.

Judges McGEE and HUDSON concur.