An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1090
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

WANSHIENDA TATUM,
      Employee, Plaintiff,

v.                                    North Carolina Industrial
                                      Commission
                                      I.C. No. W48687

CUMBERLAND COUNTY SCHOOLS,
      Employer, SELF-INSURED
      (CORVEL, Administrator),
      Defendant.


      Appeal by defendant from Opinion and Award entered 26 June 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 February 2014.


      *Roy Cooper, Attorney General, by Deborah M. Greene, Assistant Attorney General, for the State.*

      *Hardison & Cochran, PLLC, by J. Jackson Hardison, for plaintiff-appellee.*


      MARTIN, Chief Judge.


      Defendant-employer Cumberland County Schools appeals from an Opinion and Award of the North Carolina Industrial Commission awarding workers' compensation benefits to plaintiff-employee Wanshienda Tatum. For the reasons stated herein, we affirm.

On 2 October 2009, plaintiff sustained a compensable injury to her left knee arising out of and in the course and scope of her employment as a special education teacher with defendant. Plaintiff was injured when she was kicked in the left knee by an aggressive, autistic student she was assisting. On 17 February 2010, Dr. Bradley Broussard performed surgery on plaintiff's left knee. While plaintiff did not initially miss any time from work after the incident, she remained out of work following her surgery on 17 February 2010 through the remainder of the 2009-2010 school year.

Plaintiff returned to work at the beginning of the 2010-2011 school year as a resource teacher for kindergarten through second grade students. Plaintiff continued to work in this capacity until 7 January 2011. Plaintiff has not returned to work for defendant or any other employer since that date.

On 21 December 2010, plaintiff expressed to Dr. Broussard that she was experiencing severe pain and swelling to her left knee that affected her ability to sit and stand. Even with the results of a recent MRI scan, however, Dr. Broussard could not explain plaintiff's symptomology and did not recommend surgical intervention. Nonetheless, Dr. Broussard supported plaintiff's desire for another orthopedic opinion. The Industrial Commission granted plaintiff's motion to change her physician to

Dr. Louis Almekinders on 29 April 2011.

Dr. Almekinders performed a second surgery on plaintiff's left knee on 17 June 2011. On 8 August 2011, Dr. Almekinders restricted plaintiff permanently to sedentary work and later included a restriction against any type of physical handling or assisting of students. Defendant offered plaintiff a resource teacher position working with second and third grade students for the 2011-2012 school year. On 13 September 2011, Dr. Almekinders opined that the resource teacher position was not within plaintiff's work restrictions. Plaintiff did not accept the position. On 25 October 2011, Dr. Almekinders placed plaintiff at maximum medical improvement, assigned her a twenty percent permanent partial disability rating, and released her from his care.

On 13 December 2011, a digital job analysis of the resource teacher position was completed pursuant to defendant's authorization. The job analysis was then provided to Dr. Almekinders, and, on 19 January 2012, Dr. Almekinders approved the resource teacher position. During his deposition on 16 May 2012, Dr. Almekinders provided an explanation as to why he later approved the position despite the permanent work restrictions he had assigned plaintiff. Dr. Almekinders explained that after reviewing the detailed description of the resource teacher

position in the job analysis, he believed the position was "very safe" for plaintiff and he could think of no reason that the position would place plaintiff or her knee at risk. Accordingly, he testified that it was his opinion, to a reasonable degree of medical certainty, that the resource teacher position as described in the job analysis was within plaintiff's physical capabilities and limitations. There was no evidence, however, that plaintiff was thereafter offered the resource teacher position by defendant.

Throughout plaintiff's treatment for her compensable injury, plaintiff received psychiatric care from Dr. Valerie Murray. Dr. Murray diagnosed plaintiff with post-traumatic stress disorder, depression, and anxiety. Although Dr. Murray's treatment notes indicate the existence of other stressors unrelated to plaintiff's compensable injury, Dr. Murray opined that plaintiff's post-traumatic stress disorder, depression, and anxiety were caused by her compensable injury.

The deputy commissioner filed an Amended Opinion and Award on 9 November 2012, which concluded that plaintiff sustained a compensable injury on 2 October 2009 that did not result in post-traumatic stress disorder, depression, and anxiety. On 26 June 2013, the Full Commission entered an Opinion and Award affirming in part and modifying in part the deputy

commissioner's decision. The Full Commission concluded that plaintiff sustained a compensable injury on 2 October 2009 and that plaintiff's post-traumatic stress disorder, depression, and anxiety were causally related to her compensable injury. The Full Commission awarded plaintiff benefits for temporary total disability until she returns to work or further order of the Commission, as well as ongoing medical treatment and benefits for post-traumatic stress disorder, depression, and anxiety. Defendant appeals.

_____

On appeal, defendant contends that the Industrial Commission erred by concluding that (I) plaintiff did not unjustifiably refuse suitable employment, and (II) plaintiff's post-traumatic stress disorder, depression, and anxiety are causally related to her compensable injury. We disagree.

The Industrial Commission is the sole judge of the weight and credibility of the evidence, and "this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight.'" *Adams v. AVX Corp.*, 349 N.C. 676, 680–81, 509 S.E.2d 411, 413-14 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). Our review of an opinion and award of the Industrial Commission is

therefore "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008), *reh'g denied*, 363 N.C. 260, 676 S.E.2d 472 (2009). "Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Allred v. Exceptional Landscapes, Inc.*, __ N.C. App. __, __, 743 S.E.2d 48, 51 (2013). As a result, where a party only challenges the Industrial Commission's conclusions of law "our review 'is limited to the question of whether the [Industrial Commission's] findings of fact, which are presumed to be supported by competent evidence, support its conclusions of law and judgment.'" *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (alteration in original) (quoting *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591-92, 525 S.E.2d 481, 484 (2000)), *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003).

## I.

Defendant argues that the Industrial Commission erred in concluding that plaintiff did not unjustifiably refuse suitable employment. Specifically, defendant contends that plaintiff's failure to return to work once the resource teacher position was

approved by Dr. Almekinders on 19 January 2012 constituted an unjustifiable refusal of suitable employment, and, thus, plaintiff is not entitled to any further compensation.

An injured employee who unjustifiably refuses suitable employment is not "entitled to any compensation at any time during the continuance of such refusal." N.C. Gen. Stat. § 97-32 (2013). Suitable employment is defined as any job that is available to the employee and that he or she is capable of performing. *Bowen v. ABF Freight Sys., Inc.*, 179 N.C. App. 323, 332, 633 S.E.2d 854, 860 (2006). Whether an employee's refusal of suitable employment is justified is a question left to "the opinion of the Industrial Commission." N.C. Gen. Stat. § 97-32; *accord Keeton v. Circle K*, __ N.C. App. __, __, 719 S.E.2d 244, 248 (2011).

In this case, the Industrial Commission concluded:

> 4. Given Plaintiff's qualifications, work restrictions and aptitude, the E.C. Resource Teacher position was suitable employment. *See* N.C.I.C. Rules for Utilization of Rehabilitation Professionals in Workers Compensation Claims, Rule III(G); *see also Peoples v. Cone Mills*, 316 N.C. 426, 342 S.E.2d 798 (1986). However, Plaintiff did not unjustifiably refuse suitable employment between August 8, 2011 and the date of this Opinion and Award as Plaintiff's authorized treating physician initially disapproved the position as not being within Plaintiff's restrictions and the scope of Plaintiff's permanent

restrictions were unclear until clarified by the authorized treating physician during his deposition. The record is unclear regarding whether Plaintiff has been offered a current E.C. Resource Teacher [position] with Defendant-Employer.

This conclusion was supported by the following findings of fact:

18. Plaintiff was written out of work from her June 17, 2011 surgery through August 8, 2011. On August 8, 2011, Dr. Almekinders restricted Plaintiff to a sedentary, sitting job. Defendant offered Plaintiff an E.C. Resource Teacher position for the 2011-2012 school year, which was similar to the K-2nd grade resource teacher position Plaintiff performed during the 2010-2011 school year. The only difference was Plaintiff would work with 2nd and 3rd grade students instead of kindergarten to 2nd grade students. Plaintiff did not return to work.

19. On September 13, 2011, Plaintiff's work restrictions were changed to include a restriction against any type of physical handling or assisting students. Dr. Almekinders did not approve the E.C. Resource Teacher position.

. . . .

22. Pursuant to Defendant's authorization, a digital job analysis of the E.C. Resource Teacher position was completed on December 13, 2011. The E.C. Resource Teacher position required working with small groups of children to provide instruction in accordance with an Individual Education Plan (IEP). Physically, the position required, *inter alia*, frequent sitting and occasional

standing, walking, balancing, squatting, bending, stooping and kneeling. . . . Dr. Almekinders approved the E.C. Resource Teacher position on January 19, 2012.

23. During his deposition on May 16, 2012, Dr. Almekinders explained that although he assigned permanent sedentary restrictions with no physical handling or assisting of students, his intention for the permanent restrictions was "to do something safe." He also explained that after he clinically assigns restrictions, frequently the employer would actually send specific job descriptions to him for review to determine if it fits with the person's disability. After reviewing the digital job analysis, Dr. Almekinders explained, "I knew her knee. She has in essence a minor knee problem. And this was a very safe thing for her to do. And there's no real physical reason that I can think of that she would put herself or her knee at risk for these types of activities. . . . [A]t the end of the day when I look at a more detailed description and I find it's safe and reasonable, I will approve it. I can't think of any other reason to not approve it."

. . . .

32. Based upon a preponderance of the credible evidence of record, the Full Commission finds that the E.C. Resource Teacher position in an elementary school setting as described in the December 2011 digital job analysis is suitable employment given Plaintiff's orthopedic restrictions. The E.C. Resource Teacher position is suitable employment even when viewed in light of the restrictions assigned by and the concerns explained by Dr. Murray. Plaintiff would be working in a different class in a different setting, at a different

educational facility from the class setting and facility in which she was working on the date of injury.

33. Based upon a preponderance of the credible evidence of record, Plaintiff was unable to earn any wages in her former position with Defendant-Employer or in any other employment from February 21, 2011 through the date of the Opinion and Award of the Deputy Commissioner and continuing. Plaintiff was restricted to seated work only from February 21, 2011 to June 16, 2011. Defendant concedes Plaintiff is owed temporary total disability compensation from June 17, 2011 through August 8, 2011. The E.C. Resource Teacher position was not initially approved by the authorized treating physician. Although Dr. Almekinders ultimately approved the digital job analysis on January 19, 2012, Plaintiff's permanent work restrictions were not fully explained or understood until clarified by Dr. Almekinders during his deposition. Without Dr. Almekinders clarification, the E.C. Resource Teacher position as described in the digital job analysis seemed inconsistent with Plaintiff's permanent sedentary restrictions with no physical handling of students. No evidence was presented that Plaintiff has been offered a current E.C. Resource Teacher position with Defendant-Employer.

None of these findings of fact are challenged by defendant and are thus binding on appeal. *See Allred*, __ N.C. App. at __, 743 S.E.2d at 51. These findings demonstrate that although Dr. Alkeminders ultimately approved the resource teacher position after reviewing the digital job analysis, plaintiff's permanent work restrictions were not fully explained or understood until

later clarified by Dr. Almekinders during his deposition. Absent his clarification, the position—which required working with small groups of children as well as frequent sitting and occasional standing, walking, balancing, squatting, bending, stooping and kneeling—did not appear to comply with plaintiff's permanent sedentary work restrictions with no physical handling of students at the time the position was offered to plaintiff. Thus, her refusal of the position at that time was justified. Furthermore, because no evidence was presented indicating that defendant has since offered plaintiff a resource teacher position, there is no evidence to support a finding that she has refused a suitable position. We therefore affirm the Industrial Commission's conclusion that plaintiff did not unjustifiably refuse suitable employment.

## II.

Defendant's second argument pertains to the Industrial Commission's conclusion that plaintiff's post-traumatic stress disorder, depression, and anxiety are causally related to her compensable injury and are thus compensable. Defendant claims this conclusion was reached in error, arguing that "the competent evidence of the record shows that plaintiff's psychological condition is not related to her compensable knee injury, but instead is related to the administration of her

workers' compensation claim, perceived workplace retaliation and workplace safety, and non-work related personal issues." Because it is not the province of this Court to reweigh the evidence, we must disagree.

The Industrial Commission found, and similarly concluded, that "although other stressors unrelated to her injury were reported throughout the course of Plaintiff's psychiatric treatment, Plaintiff's post-traumatic stress disorder, anxiety and depression are causally related to her compensable work-related injuries." Defendant does not contend that no competent evidence exists to support the Industrial Commission's finding that plaintiff's psychological conditions are casually related to her compensable injury, nor does defendant dispute that this finding justifies a similar conclusion. Rather, defendant claims that because there is evidence of other stressors that are unrelated to plaintiff's compensable injury, the Industrial Commission erred in concluding that plaintiff's psychological conditions are causally related to her compensable injury. Defendant's argument essentially asks this Court to reweigh the evidence, focus on those parts of the record that support defendant's position, and reach a different result than that deemed appropriate by the Industrial Commission. This we cannot do as we are "not at liberty to reweigh the evidence and to set

aside the findings simply because other conclusions might have been reached." *McLeod v. Wal-Mart Stores, Inc.*, 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010) (internal quotation marks omitted).  Defendant's argument is accordingly overruled.

In light of the foregoing, we affirm the Opinion and Award of the North Carolina Industrial Commission.

Affirmed.

Judges ELMORE and HUNTER, JR. concur.

Report per Rule 30(e).